IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(SOUTHERN DIVISION)

| | |
|---|---|
| **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE REGISTERED HOLDERS OF BEAR STEARNS COMMERCIAL MORTGAGE SECURITIES INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-PWR14, ACTING BY AND THROUGH ITS SPECIAL SERVICER, C-III ASSET MANAGEMENT LLC,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) |
| **LAKEVIEW RETAIL PROPERTY OWNER LLC,** | ) ) ) |
| **Defendant.** | ) ) |

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

DEC 11 2015

ARTHUR JOHNSTON
BY_____ DEPUTY

Case #:

1:15cv404LG-RHW

---

## VERIFIED COMPLAINT FOR THE APPOINTMENT OF RECEIVER, INJUNCTIVE RELIEF, AND OTHER EQUITABLE AND LEGAL RELIEF

---

**COMES NOW,** U.S. Bank National Association, as Trustee (the "Plaintiff" or "Trustee"), successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for the registered holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-PWR14 (the "Trust"), acting by and through C-III Asset Management LLC, solely

JM ALS 1461712 v1
2016798-000233

in its capacity as special servicer ("C-III"), and for its verified complaint against Defendant, Lakeview Retail Property Owner LLC ("Defendant" or "Borrower") states the following:

## PARTIES

1.      C-III files this action solely in its capacity as the duly authorized Special Servicer for Plaintiff pursuant to a *Pooling and Servicing Agreement* dated December 1, 2006. The Trustee is a national banking association with a principal place of business in Cincinnati, Ohio.

2.      Upon information and belief, Borrower is a Delaware limited liability company that can be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Dr., Ste. 101, Flowood, MS 39232.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because property that is the subject of this action is situated in this judicial district.

## INTRODUCTION

5.      Plaintiff files the instant action to, among other things, protect the Plaintiff's interest in a retail shopping center commonly known as the "Lakeview Village," located in Harrison County, Mississippi (Second Judicial District), at 3586 Sangani Boulevard, D'Iberville Mississippi 39540 (the "Facility"). Ancillary to its accounting and breach of contract causes of action pleaded herein, Plaintiff is seeking the appointment of a receiver for the operation of the Facility and to preserve and protect the Collateral (as defined herein), including the issuance of injunctive and other equitable relief to fortify the receiver's ability to operate the Facility, as well as other equitable and legal relief.

2

## FACTS

### A.      The Loan Obligations

8.      Borrower obtained a loan in the original principal amount of $11,500,000.00 (the "Loan") from Bear Stearns Commercial Mortgage, Inc. (the "Original Lender"). The Loan is evidenced by that certain *Promissory Note*, dated October 31, 2006, executed by Borrower in favor of Original Lender in the original stated principal amount of $11,500,000.00 (as assumed, amended, and assigned from time to time, the "Note"). A true and correct copy of the Note and all allonges attached thereto is attached hereto as **Exhibit "A"**.

9.      In order to secure Borrower's obligations to Original Lender under the Note, Borrower granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Original Lender, a first priority security interest in certain real property (the "Real Property Collateral") pursuant to that certain *Deed of Trust and Security Agreement* dated October 25, 2006, recorded among the land records maintained by the office of the Chancery Clerk of Harrison County, Mississippi, Second Judicial District (the "Recording Office") on November 6, 2006, as Instrument 2006-8909T-J2, as corrected by Instrument 2007-710T-J2 filed on January 19, 2007 (as assumed, amended, and assigned from time to time, collectively, the "Deed of Trust"). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "B"**.

10.      Pursuant to the Deed of Trust, Borrower's obligations are further secured by certain personal property, including, without limitation, Borrower's fixtures, furniture, goods, equipment, accounts, licenses, general intangibles, and other collateral related to the Facility (collectively, the "Personal Property Collateral" and together with the Real Property Collateral, collectively, the "Collateral"). The Collateral encompasses all real and personal property related to the Facility, including, without limitation, the Rents (as defined below).

3

11.     Borrower's obligations are further secured by that certain *Assignment of Leases and Rents*, dated October 25, 2006, executed by Borrower in favor of MERS (as defined therein, the "Rents"), as nominee for Original Lender, and recorded in the Recording Office on November 6, 2006 as Instrument 2006-4920D-J2, as corrected by Instrument 2007-349D-J2 filed on January 19, 2007 (as assumed, amended, and modified from time to time, collectively, the "Assignment of Rents").  A true and correct copy of the Assignment of Rents is attached hereto as **Exhibit "C"**.

12.     Plaintiff's security interest in the Personal Property Collateral is also perfected through the filing of a UCC-1 Financing Statement with the Delaware Secretary of State on December 2, 2015 as Instrument No. 2015 5719389, and recorded in the Recording Office on November 24, 2015 as Instrument No. 2015 3652 T - J2 (as amended, continued, and assigned from time to time, the "Financing Statement").   A true and correct copy of the Financing Statement is attached hereto as **Exhibit "D"**.

13.     As additional security for Borrower's obligations to Original Lender, Moses Mizrahi ("Guarantor") executed that certain *Indemnity Agreement* dated October 31, 2006, in favor of Original Lender (as assumed, amended, and assigned from time to time, the "Guaranty").  A true and correct copy of the Guaranty is attached hereto as **Exhibit "E"**.

14.     As additional security for Borrower's obligations to Original Lender, Borrower executed that certain *Conditional Assignment of Management Agreement*, dated October 31, 2006, in favor of Original Lender, as acknowledged and consented to by Smita Management Corporation (the "Manager") (as assumed, amended, and assigned from time to time, the "Assignment of Management Agreement").   A true and correct copy of the Assignment of Management Agreement is attached hereto as **Exhibit "F"**.

15.     The Note, Deed of Trust, Assignment of Rents, Financing Statements, Guaranty, Assignment of Management Agreement, and all other documents referring to, relating to, or evidencing the Loan are hereinafter referred to as the "Loan Documents."  Any capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Loan Documents.

16.     The Loan and Loan Documents were assigned by Original Lender to LaSalle Bank, N.A., as Trustee for the Registered Holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificate, Series 2006-PWR14, by (i) that certain *Allonge* attached to the Note; and (ii) that certain *Omnibus Assignment*, true and correct copies of which are attached hereto as **Exhibit "G"**.

17.     The Loan and Loan Documents were further assigned to Plaintiff by the following (collectively, the "Assignments to Plaintiff"):

        a.      That certain *Allonge to Promissory Note* attached to the Note, executed by Bank of America, National Association, as successor-by-merger to LaSalle Bank, N.A., as Trustee for the registered holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, 2006-PWR14, in favor of Plaintiff;

        b.      That certain *Omnibus Assignment* dated effective as of January 1, 2011, executed by Bank of America, National Association, as successor-by-merger to LaSalle Bank, N.A. as Trustee for the registered holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, 2006-PWR14, in favor of Plaintiff;

        c.      That certain *Assignment of Deed of Trust and Security Agreement* dated November 2, 2015, executed by MERS, in favor of Plaintiff, recorded in the Recording Office on November 24, 2015 as Instrument 2015 3651 T - J2; and

        d.      That certain *Assignment of Assignment of Leases and Rents* dated November 2, 2015, executed by MERS, in favor of Plaintiff, recorded in the Recording Office on November 24, 2015 as Instrument 2015 3068 D - J2.

True and correct copies of the Assignments to Plaintiff are attached hereto respectively as **Exhibits "G-1", "G-2", "G-3" and "G-4"**.

5

18.     Plaintiff is the owner and beneficiary of the Loan Documents and holds all rights of Original Lender under the Loan Documents.

19.     For purposes of this Complaint, all of the of the amounts owed by Borrower to Plaintiff under the Loan Documents, including, without limitation, any late fees, default interest, and yield maintenance payments, shall collectively be referred to herein as the "Indebtedness." Under the Loan Documents, in addition to the Indebtedness, Borrower is obligated to reimburse Plaintiff for costs and expenses incurred by Plaintiff in connection with the Indebtedness, including, without limitation, attorneys' fees and other costs of collection, servicing fees, and costs of insuring, protecting, maintaining, or disposing of the Collateral (together with the Indebtedness, collectively, all such amounts are referred to herein as the "Obligations").

**B.      The Existing Defaults**

20.     Borrower has failed to make all payments due and owing as required under the Loan Documents, including, without limitation, the full and timely payment of principal and interest due on February 1, 2015, and certain payments due thereafter.

21.     Accordingly, the Loan is in default due to, among other things, Borrower's failure to make full and timely monthly payments of principal and interest (the "Events of Default").

22.     Based on the Events of Default, by a letter dated October 6, 2015 (the "Notice of Default"), Plaintiff notified Borrower of the Events of Default, that the obligations under the Loan Documents were accelerated, and that the entire outstanding principal balance and all other amounts owed under the Loan Documents were due and immediately payable.  Through the Notice of Default and in accord with the Loan Documents, Plaintiff also revoked Borrower's license to collect the Rents and demanded an accounting of all post-default Rents received by Borrower.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit "H".**

6

23.      Borrower failed to cure the default or satisfy the Obligations and Borrower continues to receive Rents generated from the Property notwithstanding the default under the Loan Documents and the revocation of its right to collect Rents.

24.      In this action, Plaintiff is seeking:

(a)   an accounting for and turnover of all Rents generated by the Facility;

(b)   appointment of a receiver to oversee, administer, and manage the Facility pending the foreclosure or other disposition of the Collateral;

(c)   a temporary and permanent injunction restraining and enjoining Defendant from transferring, disposing, wasting, and converting any rents, royalties, issues, profits, revenue, income, leases, security deposits, other deposits, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral (again, collectively the "Rents"), and other collateral securing the indebtedness owed, and directing Defendant to account for all such Rents it has collected since February 1, 2015, and further directing Defendant to remit all such Rents to the duly appointed Receiver, as described and qualified herein, pending further order of this Court;

(d)   damages for breach of contract under the Loan Documents; and

(e)   such other and further relief the Court may deem just and appropriate under the circumstances.

## COUNT I
## ACCOUNTING – RENTS AND PROFITS

25.      Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

26.      The Deed of Trust and Assignment of Rents grant Plaintiff possession of all Rents upon the occurrence of an Event of Default under the Loan Documents.

7

27.     Plaintiff is entitled to enforce and exercise its rights in all Rents generated by the Facility.

28.     The Plaintiff has demanded that Borrower fully comply with all of its Loan Obligations, which include an obligation to turnover to the Plaintiff all Rents.  The Plaintiff hereby renews and reiterates its demand that Borrower immediately turnover to the Plaintiff all Rents generated by the Facility.

29.     Borrower has failed and refused to turnover and deliver the Rents.

30.     Accordingly, the Plaintiff demands that the Borrower be compelled to provide an accounting for all Rents and Profits generated by the Facility and related Collateral from and after February 1, 2015.

## COUNT II
## APPOINTMENT OF A RECEIVER

31.     Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

32.     Pursuant to Fed R. Civ. P. 66, the Court may appoint a receiver upon application by a party in writing.

33.     A duly appointed receiver is an officer of the Court whose powers are set forth by 28 U.S.C. § 959(b) and 28 U.S.C. § 754, which provide (in pertinent part),

> [A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which the property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).

8

34.     Furthermore, Section 11.1(g) of the Deed of Trust provides that upon the occurrence of any Event of Default, Plaintiff has the right to "apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Borrower or of any person, firm or other entity liable for payment of the Debt."

35.     Furthermore, pursuant to Section 11.1(h) of the Deed of Trust and the Assignment of Rents, upon default, Borrower's right to collect Rents from the Facility is automatically revoked, and Plaintiff is immediately entitled to be in possession of all Rents.  Moreover, Section 11.1(h) provides that upon an Event of Default, Plaintiff may require Borrower to surrender possession of the Property to Lender or to a receiver appointed to collect the Rents.  Despite Plaintiff's recourse in and to the Collateral, including the Rents, Borrower continues to collect Rents from the Facility.

36.     Plaintiff has identified and requests that the Court appoint **The Estes Group, Inc.** ("Receiver"), as Receiver for the Facility, with Brian Estes, its President, to serve as the primary contact person.  The Estes Group and its principals have extensive experience in commercial real estate asset management, acquisitions, finance, leasing and property management, as well as significant experience as court-appointed receiver in Mississippi and other southeastern states.  Materials describing the experience and expertise of The Estes Group are attached hereto as **Exhibit "I"**.

JM ALS 1461712 v1
2016798-000233

37.     Pursuant to Section 11.1 of the Deed of Trust and this Court's equitable powers, Plaintiff requests that the Receiver have, at Borrower's expense, all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate, market for sale, enter into contracts to sell, (with final authority to sell requiring Court approval, upon motion with notice to all lienholders), and otherwise use or permit the use of the Collateral, subject to Plaintiff's approval (collectively, the "Receiver's Powers"), including, without limitation, the power to:

(a)     Enter upon and take possession and control of the Facility and all other Collateral, and to perform all acts necessary and appropriate for the operation and maintenance thereof;

(b)     Take and maintain possession of all documents, books, records, papers and accounts relating to the Facility;

(c)     Exclude Defendant and its agents, servants and employees wholly from the Facility, including changing any and all locks to the Facility;

(d)     Allow Plaintiff, its counsel, appraisers, and other independent third-party consultants engaged by Plaintiff or its counsel access to the Facility at all reasonable times to inspect the Facility and all books and records, and to cooperate with Plaintiff, its counsel, appraisers and other independent third-party consultants to evaluate the Facility;

(e)     Manage and operate the Facility under any existing name or trade name (or new name) if the Receiver deems appropriate to do so, subject to the consent of Plaintiff;

(f)     Exercise any and all rights of Defendant and/or Plaintiff (in any event subject to Plaintiff's consent) in and to any and all license and/or franchise agreements;

10

(g)     Retain, hire or discharge on-site employees at the Facility (none of whom are or shall be deemed to be employees of Plaintiff) without any liability to the Receiver or Plaintiff;

(h)     Establish pay rates for on-site employees at the Facility;

(i)     Preserve, maintain, and make repairs and/or alterations to the Facility;

(j)     Conduct a marketing or leasing program with respect to the Facility, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the Facility under such terms and conditions as Plaintiff may in its sole discretion deem appropriate or desirable;

(k)     Employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Plaintiff may in its sole discretion deem appropriate or desirable to implement and effectuate the rights and powers granted therein;

(l)     Execute and deliver, as attorney-in-fact and agent of Defendant or in Defendant's own name, such documents and instruments as are necessary or appropriate to consummate transactions authorized by order of this Court;

(m)     Enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Plaintiff may in its sole discretion deem appropriate or desirable;

(n)     Collect and receive all Rents from the Facility;

(o)     Eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

11

(p)     Pursue legal remedies for unpaid Rents and Profits, payments, income or proceeds in the name of Defendant;

(q)     Maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent;

(r)     Compromise or give acquittance for Rents and Profits, payments, income or proceeds that may become due;

(s)     Determine and report to the Court and Plaintiff whether any Rents and Profits previously received by Defendant have been used for purposes other than for the maintenance, management and operating expenses of the Facility;

(t)     Require any and all officers, directors, managers, agents, representatives, independent contractors, partners, affiliates, attorneys, accountants, shareholders and employees of the Defendant to turnover and deliver to the Receiver any and all Rents and Profits in their possession;

(u)     To open and review mail directed to Defendant and its representatives pertaining to the Facility or the Collateral;

(v)     Analyze, determine and implement the best approach to maximize value from the Collateral for the benefit of Defendant's creditors and interest holders, including, without limitation, marketing the Facility for sale as a going concern, subject to Plaintiff's prior written approval, entering into contracts to sell the Facility (with final authority to sell requiring Court approval, upon motion with notice to all lienholders); provided, however, that in no event shall Receiver's power to market the property for sale, or any other power granted hereunder, in any way impair Plaintiff's ability to exercise its rights and remedies under the Loan Documents, including, without limitation, the right to foreclose the Deed of Trust;

12

      (w)    Facilitate the assumption of the Loan by a third party, subject to Plaintiff's prior written approval;

      (x)    Enter into contracts and agreements necessary to continue normal operations of the Facility in the name of Defendant or Receiver;

      (y)    Amend, modify or terminate any existing contracts affecting the operations of the Facility, but only upon terms and conditions that are subject to Plaintiff's approval;

      (z)    Pay all appropriate real estate taxes, personal property taxes, or other taxes or assessments against the Facility, from funds in property reserves, funds generated by the Facility, or funds advanced by Plaintiff (in Plaintiff's sole discretion);

      (aa)    Exercise all rights of Defendant in and to all government-issued permits, certificates, licenses or other grants of authority, to take all steps necessary to ensure the continued validity of such permits, certificates and licenses, and to take all steps necessary to comply with all requirements, regulations and laws applicable to the Facility;

      (bb)    Maintain a separate account with a federally insured banking institution or a savings association with offices in the State of Mississippi in the Receiver's own name, as Receiver, from which the Receiver shall disburse all payments authorized by order of this Court;

      (cc)    Receive and endorse checks pertaining to the Facility, either in Receiver's name or in Defendants' name;

      (dd)    Do any acts which Plaintiff (in its sole discretion) deems appropriate or desirable to protect the security hereof and use such measures, legal or equitable (as Plaintiff in its sole discretion) deems appropriate or desirable to implement and effectuate the provisions of the Loan Documents.

JM ALS 1461712 v1
2016798-000233

38.     Pursuant to Section 11.1 of the Deed of Trust, and as a result of Borrower's failure to meet its obligations under the Loan Documents as set forth above, including, without limitation, the Events of Default, Plaintiff is entitled to the appointment of the Receiver.

39.     Plaintiff asserts that the Receiver is necessary to take control of the Collateral to receive and manage the Rents, to prevent any waste and diminution in value of the Collateral and to protect the Plaintiff's interests in the Collateral.

40.     Plaintiff reserves the right to make future requests that the Court expand the Receiver's Powers should the same be deemed necessary.

41.     Plaintiff requests that receipts received from the operation of the Facility be applied to reimburse the Receiver for all reasonable costs and expenses that it (or its delegates) incur as a result of serving as receiver, for payment of insurance premiums and management fees authorized thereunder, to compensate Receiver for its services as receiver, and for payment of all Obligations.

42.     In accord with the Deed of Trust, the appointment of the Receiver should not impair or in any manner prejudice the rights of Plaintiff to receive payment of the Rents pursuant to the terms and provisions of the Loan Documents or to exercise Lender's rights under the Loan Documents.

43.     Plaintiff requests the Receiver be authorized to remit to Plaintiff all funds, proceeds and Rents that constitute Collateral of Plaintiff for application to the indebtedness of Defendant under the Loan Documents, to the extent not expended for any of the purposes herein authorized.

44.     Plaintiff requests that this Court enter an order providing that Receiver shall be compensated for its services as Receiver as set forth in the Motion and proposed Order filed

14

contemporaneously herewith (collectively, the "Receivership Fee").

45.    Plaintiff requests that the Court enter its order allowing payment of the Receiver Fee to the receiver from the operations of the Collateral.

**COUNT III**
**EXTRAORDINARY RELIEF – TEMPORARY RESTRAINING ORDER**
**(FIRST REQUEST)**

46.    Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

47.    Pursuant to the provisions of the Deed of Trust and the Plaintiff's revocation of Borrower's right to collect the Rents, Plaintiff is entitled to collect the Rents and apply the same in accordance with the Loan Documents.

48.    Plaintiff has made demands for Borrower to turn over the Rents and cease collecting future Rents, but Borrower has failed and refused to acknowledge the same.

49.    Borrower has failed to apply the Rents in accordance with the provisions of the Loan Documents, including its failure to make monthly payments as required under the Loan Documents.

50.    Plaintiff reasonably believes its interest in the Rents is endangered and likely to be lost or rendered inadequate without the entry of injunctive relief requiring payment and escrow of the Rents to the receiver.

51.    Therefore, in addition to the rights granted Plaintiff under the Loan Documents, the equities dictate that Plaintiff be granted a temporary restraining order and, upon hearing, a preliminary and permanent injunction:

(a) prohibiting Defendant from disbursing, collecting, disposing, and converting any Rents;

15

(b) directing Defendant to account for all such Rents it has collected since February 1, 2015;

(c) further directing Defendant to remit all such Rents to the duly appointed receiver; and

(d) restraining and enjoining Defendant from collecting, transferring, disposing, wasting, and converting the Rents and other collateral securing the indebtedness owed.

52.     Plaintiff will suffer immediate and irreparable injury, loss, and damage unless Defendant is restrained and enjoined as requested hereunder.

53.     Moreover, Plaintiff is likely to prevail on the merits of this Complaint and the balance of equities favors entry of the requested equitable relief.

54.     The injuries, losses, and damages to Plaintiff cannot be remedied by money damages alone.

55.     Because the Plaintiff has no adequate remedy at law and there is a substantial likelihood that it will prevail on the merits of this Complaint, the equitable relief sought herein is appropriate.

## COUNT IV
## EXTRAORDINARY RELIEF – PRELIMINARY AND PERMANENT INJUNCTION
## (FIRST REQUEST)

56.     Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

57.     Plaintiff has a first priority perfected security interest in the Collateral, and Plaintiff possesses an absolute assignment of Rents.

58.     Based on the failure of Defendant to meet its obligations under the Note and Loan Documents, its inability to finance operations of its business, and its misapplication and

16

withholding of Rents, Plaintiff has a good faith basis for being gravely concerned about the protection and preservation of the Collateral.

59.     Absent entry of a preliminary injunction restraining and enjoining Defendant from collecting, transferring or disposing of any of the Collateral, including the Rents, Plaintiff reasonably believes that Rents may be transferred, disposed, wasted, expended, converted, and destroyed in violation of the Loan Documents, thereby causing irreparable harm to Plaintiff.

60.     As manifested in the aforementioned factual allegations, Plaintiff is likely to prevail on the merits of this action.

61.     Plaintiff has sustained and will continue to sustain immediate and irreparable injury as a result of Defendant's actions concerning collection of Rents and refusal to remit the same to Plaintiff.

62.     With respect to such conduct by Defendant, Plaintiff has no adequate remedy at law.

63.     The balance of the equities favors the issuance of a preliminary injunction in favor of Plaintiff.

64.     Accordingly, Plaintiff requests this Court enter a preliminary injunction requiring Defendant and its agents to:

(a)     Preserve intact all Rents currently in its possession or subsequently received from the Collateral pending the appointment of a Receiver; and

(b)     Immediately pay, upon appointment of a Receiver, all Rents (including security deposits) in its possession or subsequently received from the Collateral to the Receiver; and

17

(c)     Surrender possession of the Facility in order to allow the Receiver to operate the same; and

(d)     Turn over to the Receiver all books, records and accounts affecting the Facility.

65.     Upon hearing, Plaintiff requests that the Court issue a permanent injunction prohibiting Defendant from transferring, converting, or disposing of any of the Rents and directing Defendant to remit all Rents in its possession or subsequently received to the Receiver.

## COUNT V
## BREACH OF CONTRACT – BORROWER

66.     Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

67.     Borrower executed the Loan Documents that secured the Loan.

68.     Plaintiff is the holder of the Loan Documents and is entitled to enforce the Loan Documents.

69.     Under the Loan Documents, Borrower incurred various contractual obligations to Plaintiff, including the obligation to turnover the Rents to Plaintiff upon default and the obligation for payment of certain losses, damages, and costs arising out of, among other things, the misapplication or conversion by Borrower of any Rents following default under the Note. Borrower has failed to remit all Rents, including post-default Rents, to Plaintiff.

70.     Borrower has breached its obligations to Plaintiff under the Loan Documents by failing to turnover to Plaintiff the Rents, including post-default Rents, thereby causing damages to Plaintiff.

71.     Accordingly, Plaintiff demands judgment against Borrower for breach of contract under the Loan Documents in an amount to be determined at trial, together with all accruing

18

interest and costs, including, without limitation, default interest, prepayment premiums, attorneys' fees, and all expenses incurred by Plaintiff in collecting the Obligations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

1.      That the Court appoint The Estes Group, Inc. as receiver to take possession of the Collateral with responsibilities and authorities consistent with the Receiver's Powers as set forth in accordance with the terms of the proposed *Order Appointing Receiver and Granting Related Injunctive Relief*, attached hereto as **Exhibit "J"**.

2.      That the Court grant Plaintiff and/or the duly appointed receiver injunctive relief which, among other things: (i) enjoins the Defendant from interfering with the duties of the receiver and/or Plaintiff; (ii) directs the payment of all Rents, receipts and revenues to the receiver and/or Plaintiff; and (iii) provides all other relief as requested herein and as may be necessary to preserve and protect the Collateral and in aid of the duties conferred on the receiver and/or Plaintiff by this Court;

3.      That the Court enter an order requiring the Defendant to provide an accounting for and turnover of all Rents,

4.      That the Court enter judgment in favor of Plaintiff against Borrower in an amount to be determined at trial, to the fullest extent to which Plaintiff is entitled under the Loan Documents;

5.      That the Court, if requested, direct the receiver to administer the Collateral in a manner which will not jeopardize the operation of the Collateral, including the Facility, while maximizing the amount realized by Plaintiff from the Collateral; and

6.      For any such other, further, or different relief to which Plaintiff may be entitled.

JM ALS 1461712 v1
2016798-000233

Respectfully submitted, this the 10th day of December, 2015.

> BAKER, DONELSON, BEARMAN
> CALDWELL & BERKOWITZ, PC
>
> _____
> Alan L. Smith, Esq. (MS Bar No. 10345)
> 4268 I-55 North
> Meadowbrook Office Park
> Jackson, MS 39211
> Telephone: 601-351-8932
> Facsimile: 601-974-8932
> Email: asmith@bakerdonelson.com
>
> *Attorney for U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for the registered holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-PWR14, acting by and through its special servicer, C-III Asset Management, LLC*

**OF COUNSEL:**

Timothy M. Lupinacci (Alabama Bar # 7626-I64T)
Matthew M. Cahill (Alabama Bar # 4087-E64C)
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
420 Twentieth Street North
Wells Fargo Tower, Suite 1400
Birmingham, Alabama 35203
Tel:    (205) 328-0480
Fax:    (205) 322-8007
Email: tlupinacci@bakerdonelson.com
mcahill@bakerdonelson.com

JM ALS 1461712 v1
2016798-000233

## VERIFICATION

I, *MIKE DICKERSON* am *A SERVICING OFFICER* of C-III Asset Management LLC, acting solely in its capacity as Special Servicer for the Trust ("C-III"), and one of the custodians of C-III's business records pertaining to the Trust, having first being duly sworn and being authorized to make this statement, do make oath that I am an adult citizen competent to testify to the matters stated herein, that I have read the foregoing Verified Complaint and have examined the documents attached as Exhibits thereto, and that, based upon my personal knowledge of the facts stated therein and upon my review of the records of C-III pertaining to the Trust that were kept as a regular practice of C-III in the course of C-III's regularly conducted business activity, and that were made at or near the time of the occurrence of the matters set forth, the facts stated in the Verified Complaint are true and the documents attached as Exhibits are accurate copies of the records of the regularly conducted activity of C-III pertaining to the Trust.

C-III Asset Management LLC, solely in its capacity as Special Servicer for the Trust

By: _____
Name: *MIKE DICKERSON*
Title: *SERVICING OFFICER*

STATE OF TEXAS
COUNTY OF *Dallas*

Personally appeared before me, the undersigned authority in and for said State and County, on this _3_ day of *December*, 2015, within my jurisdiction, the within named *Mike Dickerson*, who acknowledged to me that he is a *Servicing Officer* of C-III Asset Management LLC, acting solely in its capacity as Special Servicer for the Trust ("C-III"), and that for and on behalf of C-III, and as the act and deed of C-III, he executed the above and foregoing Verification after first having been duly authorized by C-III so to do.

_____
Notary Public

My commission expires:

_____

**VIVIAN P HARRIS**
Notary Public, State of Texas
My Commission Expires
December 16, 2015