IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE REGISTERED HOLDERS OF BEAR STEARNS COMMERCIAL MORTGAGE SECURITIES INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-PWR14, ACTING BY AND THROUGH ITS SPECIAL SERVICER, C-III ASSET MANAGEMENT LLC, <br><br>    Plaintiff, <br>v. <br><br>LAKEVIEW RETAIL PROPERTY OWNER, <br><br>    Defendant. | Case #: 1:15cv00404-LG-RHW |

**ORDER APPOINTING RECEIVER AND
GRANTING RELATED INJUNCTIVE RELIEF**

In accordance with the [33] Order Granting Motion for Appointment of Receiver and Injunctive Relief enter in this action on May 5, 2015, it is hereby **ORDERED**:

1. All terms not otherwise defined herein shall have the meaning given to them in the [1] Verified Complaint.

2. Pursuant to Section 11-5-151 of the Mississippi Code, **The Estes Group, Inc.** (the "<u>Receiver</u>") is hereby appointed as receiver of the Collateral (as defined in the Verified

Complaint), including all real and personal property relating to and including the "Facility" (as defined and further described in the Verified Complaint) which consists of a retail shopping center commonly known as the "Lakeview Village", located in Harrison County, Mississippi, at 3586 Sangani Boulevard, D'Iberville Mississippi 39540.  Brian Estes, President of The Estes Group, Inc., will be the point person and primary contact for the Receiver.

3. The Receiver will immediately assume all of its rights, powers, duties, liabilities, and responsibilities as receiver, and shall undertake any actions necessary of any kind as receiver, effective immediately upon entry of this Order (the "Effective Date").  On the Effective Date, the Receiver shall begin to exercise such duties, responsibilities, power, and authority with respect to the Collateral and the Facility as allowed by law and set forth herein.

4. The Receiver shall post a bond in the amount of $50,000.00 within five (5) business days after the Effective Date.

5. The Receiver shall immediately open and maintain a separate account with a federally insured banking institution or a savings association with offices in the State of Mississippi in the Receiver's own name, as the Court-appointed receiver, from which the Receiver shall disburse all payments authorized by this Court.  The Receiver shall also, as soon as possible, take all necessary steps to insure continuation of all necessary utility services to the Facility, such as those relating to the provision of sewer, water, electrical, and sanitation services, including establishing or transferring such accounts into the Receiver's name as the Court-appointed receiver.

6. The Defendant is ordered to immediately surrender complete control of the Collateral and the Facility to the Receiver, and to provide the Receiver and its agents, employees

and contractors with uninterrupted access to and control over all books, records, accounts and documents relating to the Collateral, the Facility and the operations thereon.

7. The Defendant is further ordered to immediately remit to the Receiver all funds which are rents, leases, royalties, issues, profits, proceeds, security deposits, revenue, income, or other benefits of any kind whatsoever, including insurance proceeds, insurance premium refunds and/or condemnation proceeds, that are derived, generated, or related to or from the Facility or other Collateral (collectively, the "Rents and Profits") that are within its possession, custody or control as of the entry of this Order.

8. Within one (1) business day after receipt, the Defendant shall pay to the Receiver (or any agent identified by the Receiver) all Rents and Profits that come into the possession, custody or control of the Defendant subsequent to entry of this Order.

9. The Defendant shall immediately turn over to the Receiver on the Effective Date all books, records (including all current monthly and year-to-date operating statements, monthly rent rolls, balance sheets, and all information supporting said documents as reasonably requested by the Receiver), security deposits, escrows, leases, contracts, computers and access to all financial and other information relating to the Collateral, the Facility and the operations thereon, as maintained in any form including electronically, including information regarding computers and software programs utilized by the Defendant and all administrator access codes, passwords or keys thereto in order to give the Receiver full access to all such information relating to the Collateral, Facility and the operations thereon, including the Rents and Profits.  To the extent that such material or information is held by third-parties, the Defendant shall take all reasonable and necessary measures to ensure access of the Receiver to the same.

10. Any and all other persons and entities in possession of or having custody or control over any documents, books, or accounting records relating to the Collateral and/or the operation of the Facility, including, but not limited to, the Defendant, shall deliver such materials to the Receiver forthwith, and shall account for and pay over to the Receiver any Rents and Profits in his/her/its possession. Included within such records are copies of all customer lists, service contracts, management contracts, utility bills, and any and all current or past operating statements for the Facility (including all current monthly and year to date operating statements, monthly rent rolls, balance sheets, and all information supporting said documents as may be reasonably requested by the Receiver), as well as any other documents maintained by the Defendant or its agents pertinent to the Collateral or the management or operation of the Facility.

11. Until further order of this Court, the Defendant and those acting in concert with the Defendant who are on notice of this Order, are hereby restrained and enjoined from interfering in any way with the Receiver's access to the Collateral or the Facility, or with the Receiver's management of the Collateral or the Facility or the operations thereon during the pendency of this action.

12. The Defendant is enjoined from removing any property from the Facility without the express written permission of the Receiver.

13. The Plaintiff shall post a bond in the amount of $10,000.00 within five (5) business days after the Effective Date, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

14. The Defendant will reasonably cooperate with the Receiver in connection with obtaining any and all approvals, forms, and other documentation reasonably requested by the

Receiver as maybe necessary for the Receiver to execute its duties and powers as set forth by this Order.

15. The Receiver shall have all of the usual powers and duties of receivers in similar cases, as set forth in the Verified Complaint, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate, market for sale, and enter into contracts to sell all or portions of the Facility and/or the Collateral (subject to the Plaintiff's approval, and with final authority to sell any portion of the Facility and/or the Collateral requiring Court approval upon motion with notice to the Parties and all lienholders), and to otherwise use or permit the use of the Facility and the Collateral, subject to the Plaintiff's approval (collectively, the "Receiver's Powers"), including, without limitation:

    (a)    Enter upon and take possession and control of the Facility and all other Collateral, and to perform all acts necessary and appropriate for the operation and maintenance thereof;

    (b)    Take and maintain possession of all documents, books, records, papers and accounts relating to the Facility;

    (c)    Exclude the Defendant and its agents, servants and employees wholly from the Facility, including changing any and all locks, keys and/or passcodes to the Facility;

    (d)    Allow the Plaintiff, its counsel, appraisers, and other independent third-party consultants engaged by the Plaintiff or its counsel access to the Facility at all reasonable times to inspect the Facility and all books and records, and to cooperate with the Plaintiff, its counsel, appraisers and other independent third-party consultants to evaluate the Facility;

    (e)    Manage and operate the Facility under any existing name or trade name (or new name) if the Receiver deems appropriate to do so, subject to the consent of the Plaintiff;

(f) Exercise any and all rights of the Defendant and/or the Plaintiff (in any event, subject to the Plaintiff's consent) in and to any and all license and/or franchise agreements related to the Facility or the Collateral;

(g) Retain, hire or discharge any on-site employees at the Facility (none of whom are or shall be deemed to be employees of the Plaintiff) without any liability to the Receiver or the Plaintiff;

(h) Establish pay rates for on-site employees at the Facility;

(i) Preserve, maintain, and make repairs and/or alterations to the Facility;

(j) Conduct a marketing or leasing program with respect to the Facility, or employ a marketing or leasing agent or agents to do so, directed to the leasing and/or sale of all or portions of the Facility, subject to the Plaintiff's approval and under such terms and conditions as the Plaintiff may in its sole discretion deem appropriate or desirable (and with final authority to sell any portion of the Facility requiring Court approval upon motion with notice to the Parties and all lienholders);

(k) Employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Plaintiff may in its sole discretion deem appropriate or desirable to implement and effectuate the rights and powers granted therein;

(l) Execute and deliver, as attorney-in-fact and agent of the Defendant or in the Defendant's own name, such documents and instruments as are necessary or appropriate to consummate transactions authorized by this Order and/or any other order of this Court;

(m) Enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as the Plaintiff may in its sole discretion deem

appropriate or desirable;

(n)     Collect and receive all Rents and Profits generated by the Facility;

(o)     Eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

(p)     Pursue legal remedies for unpaid Rents and Profits, payments, income, proceeds or any other claim, right or cause of action arising out of and/or related to the Collateral or the Facility, in the name of the Defendant and/or the Receiver;

(q)     Maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent;

(r)     Compromise or give acquittance for Rents and Profits, payments, income or proceeds that may become due;

(s)     Determine and report to the Court and the Plaintiff whether any Rents and Profits previously received by the Defendant have been used for purposes other than for the reasonably necessary maintenance, management and operating expenses of the Facility;

(t)     Require any and all officers, directors, managers, agents, representatives, independent contractors, partners, affiliates, attorneys, accountants, shareholders and employees of the Defendant to turnover and deliver to the Receiver any and all Rents and Profits in their possession;

(u)     To open and review mail directed to the Defendant and its representatives pertaining to the Facility or the Collateral;

(v)     To analyze, determine, and implement the best approach to maximize value from the Collateral and the Facility for the benefit of the Defendant's creditors and interest holders, including, without limitation, marketing the Facility for sale as a going concern and,

subject to the Plaintiff's approval, entering into contracts to sell all or portions of the Collateral and/or the Facility (with final authority to sell any portion of the Collateral and/or the Facility requiring Court approval, upon motion with notice the Parties and all lienholders); provided, however, that in no event shall the Receiver's power to market the property for sale, or any other power granted hereunder, in any way impair the Plaintiff's ability to exercise its rights and remedies under the Loan Documents, including, without limitation, the Plaintiff's right to foreclose the Deed of Trust and/or to otherwise proceed with enforcement of the Plaintiff's liens and security interests in and to the Collateral and/or the Facility;

  (w) Facilitate the assumption of the Loan by a third party, subject to the Plaintiff's prior written approval;

  (x) Enter into contracts and agreements necessary to continue normal operations of the Facility in the name of the Defendant and/or the Receiver;

  (y) Amend, modify or terminate any existing contracts affecting Collateral and/or the operations of the Facility, including but not limited to property management agreement, but only upon terms and conditions as are approved by the Plaintiff;

  (z) Pay all appropriate real estate taxes, personal property taxes, or other taxes or assessments against the Facility, utilizing funds in property reserves, funds generated by the Facility, or funds that may be advanced by the Plaintiff (in the Plaintiff's sole discretion, and with no obligation for the Plaintiff to make any such advances);

  (aa) Exercise all rights of the Defendant in and to all government-issued permits, certificates, licenses or other grants of authority, to take all steps necessary to ensure the continued validity of such permits, certificates and licenses, and to take all steps necessary to comply with all requirements, regulations and laws applicable to the Facility;

    (bb) Maintain a separate account with a federally insured banking institution or a savings association with offices in the State of Mississippi in the Receiver's own name, as receiver, from which the Receiver shall disburse all payments authorized pursuant to this Order and/or any other order of the Court;

    (cc) Receive and endorse checks, negotiable instruments and/or other transfers or tenders of funds pertaining to the Collateral and/or the Facility, either in Receiver's name or in the Defendant's name;

    (dd) Do any acts which the Plaintiff (in its sole discretion) deems appropriate or desirable to protect the Facility and the Collateral, and to use such measures, legal or equitable (as the Plaintiff, in its sole discretion, deems appropriate or desirable) to implement and effectuate the provisions of the Loan Documents.

  16. The Receiver shall maintain accurate accounting and other records of its activities in connection herewith, and shall file with the Court and serve on the parties monthly reports detailing the results from operations of the Facility.

  17. The obligations of the Defendant as described in this Order are on-going, specifically including, without limitation, the obligation to turn over information, documents, funds, Rents and Profits, and all else to which the Receiver is entitled.

  18. The receipts received from the operation of the Facility shall be applied to reimburse the Receiver for all reasonable costs and expenses that it (or its delegates) incurs as a result of serving as receiver, for payment of insurance premiums and other fees authorized hereunder, to compensate Receiver for its services as receiver, and for payment of all Obligations (as defined in the Verified Complaint).

19. Nothing in this Order shall impair or in any manner prejudice the rights of Plaintiff to receive payment of the Rents and Profits pursuant to the terms and provisions of the Loan Documents, or to exercise its other rights, liens and/or remedies in and to the Collateral including, without limitation, to foreclose the Deed of Trust.

20. The Receiver is hereby authorized and directed to remit to the Plaintiff all funds, proceeds and rents, including the Rents and Profits, that constitute Collateral of the Plaintiff, for application by the Plaintiff to reduce the indebtedness and/or other obligations owed by the Defendant pursuant to the Loan Documents, to the extent such funds, proceeds and rents not expended for any of the purposes herein authorized.

21. If the Receiver receives notice that a petition for relief under the Bankruptcy Code, Title 11, United States Code, has been filed, and part of the bankruptcy estate includes property that is the subject of this order (for purposes of this paragraph, the "Bankruptcy Estate Property"), the Receiver shall have the following duties:

   (a)   Turn over Bankruptcy Estate Property if no relief from stay is sought. The Receiver shall immediately contact Plaintiff and determine whether Plaintiff intends to move in the bankruptcy court for an order for (1) relief from the automatic stay, and (2) relief from the Receiver's obligation to turn over the Bankruptcy Estate Property (11 U.S.C. § 543). If Plaintiff has no intention to make such a motion, the Receiver shall immediately turn over the Bankruptcy Estate Property to the appropriate entity, either to the bankruptcy trustee, if one has been appointed, or, if not, to the debtor in possession, and otherwise comply with 11 U.S.C. § 543.

   (b)   Remain in possession pending resolution. If Plaintiff intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the Bankruptcy Estate Property, the Receiver may remain in possession and preserve the Bankruptcy Estate Property pending the ruling on those motions (11 U.S.C. § 543(a)). The Receiver's authority to preserve the Bankruptcy Estate Property shall include the right to do the following :

      (1)   The Receiver may continue to collect Rents and Profits and other income;

      (2)   The Receiver may make disbursements necessary to preserve and protect the Bankruptcy Estate Property;

   (3) The Receiver may execute any new leases or other long-term contracts as necessary to maintain the Property; and

   (4) The Receiver shall do nothing that would effect a material change in the circumstances of the Bankruptcy Estate Property.

  (c) Turn over property if no motion for relief is filed within ten (10) days after notice of the bankruptcy.  If Plaintiff fails to file a motion within ten (10) court days after its receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the Bankruptcy Estate Property to the appropriate entity, either to the bankruptcy trustee, if one has been appointed, or, if not, to the debtor in possession, and otherwise comply with 11 U.S.C. § 543.

  (d) Retain bankruptcy counsel.  The Receiver may petition this Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that effect the receivership or the Receiver's ability to perform its duties.

  22. The Receiver shall be named as an additional insured party on existing liability and property damage insurance policies on the Collateral and if needed, is authorized to obtain customary insurance coverage for the Collateral in such types and amounts as Plaintiff may approve (in its sole discretion), as an expense of the Receiver payable out of revenues generated from the operations of the Collateral or funds as may be advanced by Plaintiff (in its sole discretion).

  23. The Defendant shall not cancel any existing liability or property damage insurance policies on the Collateral, nor shall the Defendant cancel or alter any utility contracts, such as those relating to the provision of sewer, water, electrical, and sanitation services.

  24. This Order is without prejudice to the right of the Receiver to make future application to this Court, by motion and upon notice to all parties, for further or other authority as may be necessary in its performance of its duties including, without limitation, expanded powers.

  25. The Receiver shall be paid an initial transition/set up fee of $1,200.00 and shall be compensated on a monthly basis by payment of (i) for management services, the greater of

$2,500.00 or 4% of the Facility's gross income; (ii) for receiver services, $190.00 per hour spent on receivership duties, plus reimbursement for all reasonable travel, out of pocket expenses, and legal expenses; and (iii) such reasonable leasing commissions as agreed to by the Receiver and the Plaintiff (collectively, the "Receivership Fee").  The Receivership Fee shall be paid to the Receiver from either the Rents and Profits received from the operation of the Property, or from any funds that may be advanced by the Plaintiff (in its sole discretion).

26. In the event the Receiver is no longer willing or able to perform its duties hereunder, the Receiver may petition this Court by motion with notice to all parties for an order discharging it as receiver.

27. The Receiver shall not be liable for any obligation of the Defendant relating to the Collateral or the Facility that occurred, accrued, arose and/or pertains to matters occurring or arising prior to the Effective Date of this Order, including, without limitation, any contingent or unliquidated obligations or potential liability, taxes of any kind, assessments, utility charges, claims of premises liability or other negligence, or for goods or services provided to the Defendant or the Facility by third-parties (including claimed liability for alleged materialman's liens or claims), nor shall the Plaintiff or the Receiver be obligated to advance any funds to pay any expense of maintenance or other liability of the Facility.  Notwithstanding the foregoing, should the Plaintiff decide, in its sole discretion, to advance funds to maintain or preserve the Facility or the Collateral, the repayment of all such funds advanced shall be secured by the Loan Documents.

28. The Receiver shall have no liability to any party for any claims, actions, or causes of action arising out or relating to events or circumstances occurring prior to the Effective Date of this Order.  This protection of the Receiver from liability shall include, but is not limited to,

any liability from the performance of services or the delivery of goods rendered by third-parties to or on behalf of the Defendant, and any liability to which the Defendant is currently or may ultimately be exposed to under any applicable laws pertaining to the ownership and/or use of the Facility, the Collateral, or the operations of Defendant's business.

29. Following the Receiver's appointment, the Receiver shall not be deemed in any way to be an owner of the Facility.

30. Notwithstanding any other provision of this order, the Receiver, and any of its officers, directors, employees, agents, etc., shall have no liability as to any claim, liability, actions, cost or expense of the Defendant or its affiliates to any person or entity (including, without limitation, any environmental claims, liabilities, obligations, or liens, and any amounts owed to any of the Defendant's creditors because of the duties imposed upon the Receiver hereunder), or causes of action of any third parties who have or would have claims against the owner of the Facility or the Collateral, or any officer, director, or partner thereof, including, without limitation, any claims under any federal or state environmental laws, whether arising out of or related to events occurring prior to or after the Effective Date of this Order or otherwise; unless from the Receiver's gross negligence or intentional misconduct.

31. The Receiver shall have no personal liability in connection with the performance of its obligations hereunder, unless from the Receiver's gross negligence or intentional misconduct. Any party asserting a claim against the Receiver must first obtain leave of this Court to do so. The provisions of this Paragraph 31 shall survive the termination of the receivership and discharge of the Receiver.

32. The Court retains jurisdiction for such other orders as shall be deemed just and necessary. Further, the Court reserves judgment on all matters raised in the Verified Complaint

that are not expressly adjudicated by this Order, and will address those issues at the trial of this matter or upon motion of either party.

**SO ORDERED AND ADJUDGED** this the 27th day of June, 2016.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE